**UNITED STATES, Plaintiff, Appellee,**

v.

**Edilberto MENDOZA–ACEVEDO,
Defendant, Appellant.**

**No. 90–1727.**

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1991.

Decided Nov. 5, 1991.

Thomas R. Lincoln, San Juan, P.R., by appointment of the court, for defendant, appellant.

Jose A. Quiles with whom Daniel F. Lopez Romo, U.S. Atty., and Ivan Dominguez, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for plaintiff, appellee.

Before SELYA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Mendoza was enroute from his native Colombia to Pisa, Italy when a customs inspection at the airport in San Juan revealed cocaine in his shoes and in the handbag he carried off the plane. He was arrested, tried and convicted on drug possession, importation and trafficking charges. On appeal, he claims the court erred in instructing the jury and in refusing to hold a hearing on the voluntariness of incriminating statements. We affirm.

## I. *Background*

Defendant testified at trial that neither the shoes he was wearing nor the handbag he was carrying belonged to him, and that he had no knowledge they contained cocaine until after the customs agent told him. Both items, he claimed, belonged to a man named Carlos Trujillo, who first engaged him in conversation at the airport in

* Of the Second Circuit, sitting by designation.

Colombia and later sat next to him on the plane to Puerto Rico. Trujillo offered to switch shoes because Mendoza's feet had become swollen and Trujillo's shoes were larger. Mendoza further testified that he did not realize until after the customs inspection that Trujillo had given him the black handbag rather than Mendoza's own blue briefcase; both bags had been stored in the overhead baggage compartment.

Mendoza sought to show that he was susceptible to Trujillo's efforts to transfer the contraband because he, Mendoza, was intoxicated. He testified that he began drinking while waiting for the flight to board in Colombia and continued drinking small bottles of wine on the plane.

At the time of his arrest, Mendoza was advised in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), of his constitutional rights to remain silent and retain counsel. He signed a form acknowledging that he understood his rights and that he did not wish to waive them. Several hours later, a newly arrived customs agent, Pena, again advised Mendoza of his rights and then initiated questioning. According to the agent's testimony, Mendoza admitted that he was delivering cocaine to an unidentified buyer in Italy, and he described how the transaction was to take place, including the code words to be used. Mendoza indicated that the $1,500 in cash that he was carrying was a payment for the delivery.

Defendant moved before trial to suppress his incriminating statements on the ground that Agent Pena improperly initiated interrogation following his assertion of his right to counsel. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *United States v. Browne,* 891 F.2d 389, 394–95 (1st Cir.1989). The district court accepted the magistrate-judge's recommendation

that the statements be suppressed, and the government therefore was barred from using them in its case-in-chief.

During the fifth day of trial, however, following defendant's testimony, the government sought a ruling from the court allowing it to use the suppressed statements for impeachment. *See Harris v. New York,* 401 U.S. 222, 224–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971) (evidence inadmissible in case-in-chief under exclusionary rule may be admissible to impeach credibility); *United States v. Lawrence,* 889 F.2d 1187, 1189 (1st Cir.1989). In response, defense counsel for the first time raised a question concerning the voluntariness of Mendoza's incriminating statements, and asked that the court hold a hearing pursuant to 18 U.S.C. § 3501 before allowing the rebuttal testimony.[1] After a lengthy discussion, the district court denied the request for a hearing, holding that the defendant's position that he never made the statements precluded him from raising a voluntariness challenge.[2] Pena then testified about the confession.

Defendant claims on appeal that it was reversible error for the district court to refuse to hold a hearing to determine whether his confession was involuntary. In addition, he argues that the court made three significant errors in its instructions to the jury.

## II. *Voluntariness Hearing*

Mendoza disputes the district court's holding that he was not entitled to a hearing on the voluntariness of his confession because of his defense stance that he had not made the statements at all. Mendoza argues that he should have been permitted to offer alternative defenses and that, consequently, he was entitled to show that any confession made by him would have to be

---

1. Section 3501 provides that confessions shall be admissible in evidence if voluntarily given. Subsection (a) states, in part, that "[b]efore such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness."

2. Defendant did not during his testimony explicitly deny making the statements; he simply denied knowing that he was carrying cocaine. During the discussion concerning the § 3501 hearing, however, defense counsel told the judge that "the defendant's position before the jury is that he did not make such statements." Tr. at 236. The jury was not present during this discussion.

considered involuntary in light of the circumstances.

We agree that Mendoza generally had the right to pursue alternative defenses. *See, e.g., United States v. Sanchez,* 943 F.2d 110, 113–14 & n. 4 (1st Cir.1991) (defendant may claim interest in cocaine at suppression hearing but deny possession charge at trial). We need not delve into that issue, however, because a much more straightforward principle of law supports the district court's decision to deny a voluntariness hearing. *See United States v. Lawrence,* 889 F.2d at 1190 (quoting *J.E. Riley Investment Co. v. Commissioner of Internal Revenue,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940)) (" 'Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action.' "); *Doe v. Anrig,* 728 F.2d 30, 32 (1st Cir.1984) (appellate court free to affirm based on any ground supported by the record).

Under Rule 12 of the Federal Rules of Criminal Procedure, a defendant waives a suppression claim if it is not made before trial, *see* F.R.Crim.P. 12(b)(3), (f), and a court may grant relief from the waiver only "for cause shown," *id.* at (f). *See, e.g., United States v. Leal,* 831 F.2d 7, 10 (1st Cir.1987). In this case, defendant filed a pretrial motion for suppression of his confession, but based it entirely on Agent Pena's improper initiation of questioning. The voluntariness issue was not raised until the fifth day of trial and, accordingly, was waived. The record shows no reason for the delay that would have permitted the court to grant relief from the waiver.[3] *See United States v. Wilson,* 895 F.2d 168, 173 (4th Cir.1990) (finding waiver where voluntariness hearing requested on day of trial, one month after hearing on motion to suppress other evidence). *See also* 1 C. Wright, *Federal Practice and Procedure* § 193, at 698 & n. 24 (1982) (relief under 12(f) should be granted only upon showing of cause and prejudice).

We note, in addition, that the district court's refusal to hold a hearing, although not expressed in terms of waiver, may, in fact, be construed as invoking the waiver principle. The court held, in effect, that the defendant was not entitled to take his defense in a new, inconsistent direction late in the trial. Had defendant sought at the outset to suppress the statements as involuntary, while presenting a defense at trial based on his never having made them, the court might well have allowed him to do so.

Finally, the defendant has not been deprived entirely of a finding on voluntariness. Although the issue was not argued at the pretrial suppression hearing, the magistrate nevertheless observed that "the evidentiary hearing established facts that would ... defeat any subsequent claim of lack of voluntariness." Magistrate's Report and Recommendation at 3. Thus, Mendoza received more than his due on this issue.[4]

### III. *Jury Instructions*

Mendoza claims that three portions of the jury charge violated his rights. Al-

---

3. At oral argument, defense counsel stated that the original prosecutor in the case had told him informally that the government did not intend to use the incriminating statements in either the case-in-chief or for impeachment. No evidence of this conversation appears in the record, however, and we therefore may not take it into account on appeal.

In any event, the record demonstrates that defendant was told, at least by the first day of trial, that the government expected to use the statements on rebuttal. *See* Tr. at 246–47. The additional delay in seeking a hearing unquestionably was inexcusable.

4. Mendoza cites in support of his claim *United States v. Janoe,* 720 F.2d 1156, 1163–64 (10th Cir.1983), in which the court remanded for a voluntariness hearing even though the defendant had failed to request one until the morning of trial. The government's brief in *Janoe* had argued Rule 12 waiver, but abandoned that position at oral argument. *Id.* at 1164 n. 14. In finding that a hearing was necessary in the circumstances of that case, the Tenth Circuit noted that defendant's request was made *before* trial, that he objected to admission of the confession when it was offered, and that the testimony did indicate intoxication. *Id.*

The circumstances here are quite different. Mendoza's request for a hearing came toward the end of the trial, the confession was to be used only for impeachment, and some consideration was given to the voluntariness issue by the magistrate. There is no reason here to bypass the Rule 12 waiver.

**4**

though defense counsel raised his concerns at a formal charge conference and in writing, he failed to object to the challenged language after the court instructed the jury. It has long been established in this circuit that failure to renew objections after the charge constitutes waiver of any claim of error. *Wartski v. Bedford,* 926 F.2d 11, 22 (1st Cir.1991); *United States v. Coady,* 809 F.2d 119, 123 & n. 3 (1st Cir. 1987).

Consequently, with only "plain error" review available to Mendoza, *see United States v. McMahon,* 938 F.2d 1501, 1510 (1st Cir.1991), we find it necessary to discuss only his claim concerning the concept of "guilt or innocence." At various points in the charge, the court made the following statements:

You must, members of the jury, follow and apply these principles in reaching your decision on the question of innocence or guilt.

Tr. at 311.

If you view the evidence in this case as reasonable[sic] permitting either of two conclusions, one of innocence and the other of guilt, you should, of course, adopt the conclusion of innocence.

Tr. at 313–14.

I caution you, members of the jury, that you are here to determine the guilt or innocence of the defendant from the evidence in this case.

Tr. at 329.

Bear in mind also that you are never to reveal to any person, not even to the court, how the jury stands numerically or otherwise, on the question of the guilt or innocence of the accused until after you have reached a unanimous verdict.

Tr. at 333.

Defendant argues that the district court's repeated reference to his "guilt or innocence" diluted the presumption of innocence and diminished the government's burden of proving him guilty beyond a reasonable doubt. He points out that a defendant is never required to prove his innocence; jurors are asked to decide only whether the government has proven guilt

to a sufficient certainty, not whether the defendant is innocent.

The district court responded to defendant's objection by terming this simply a matter of semantics. According to the court, "the fact that the defendant does not have to prove his innocence does not need[sic] one to conclude that there is not an issue of innocence or guilt in the case." Tr. at 263.

■ We think Mendoza has a legitimate complaint. Our criminal jurisprudence is premised on the fact that a defendant is entitled to a "not guilty" verdict, whether or not the jurors believe he is innocent, if the government fails to meet its burden of proving guilt beyond a reasonable doubt. When a court repeatedly tells jurors that the question is one of guilt or innocence, it risks undercutting the government's burden by suggesting that they should find the defendant guilty if they think he is not innocent—regardless of how convincing the government's proof has been. Hence, within our criminal justice system, we think the difference between "not guilty" and "innocent" is more than semantics. *See United States v. Mocciola,* 891 F.2d 13, 16 (1st Cir.1989) (quoting *United States v. Isom,* 886 F.2d 736, 738 (4th Cir.1989)) (" 'A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not necessarily establish the defendant's innocence.' "). We therefore hold that district judges should be wary of the risks of misunderstanding in a "guilt or innocence" comparison.

■ Our conclusion does not, however, lead to reversal of Mendoza's conviction. In reviewing the charge as a whole, as we must, we are convinced that any confusion engendered by the inappropriate references to "guilt or innocence" was offset by the court's careful and clear discussion of the presumption of innocence and the government's burden of proof. *See United States v. Boylan,* 898 F.2d 230, 244 (1st Cir.1990) ("We gauge each jury instruction in the context of the charge as a whole, not in isolation."); *see also Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The court told the jury

that the defendant need not prove his innocence, and that "[i]f the government fails to meet its burden of proof, you must find the defendant not guilty." Tr. at 313. It further instructed that if the jury, "after a careful and impartial consideration of all the evidence admitted in this case, have a reasonable doubt that the defendant is guilty of the charges, you must find him not guilty." *Id.*

Particularly as this issue is before us only for plain error review, there is no basis on which to reverse defendant's conviction. The remaining two claims of instructional error, as we indicated above, do not merit discussion.

*Affirmed.*