# United States Court of Appeals
## For the First Circuit

No. 15-2383

IN RE: JOHN E. HOOVER, III,

Debtor,

JOHN E. HOOVER, III,

Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee for Region 1,

Appellee,

RICHARD KING; JOHNATHAN R. GOLDSMITH, Chapter 7 Trustee,

Interested Parties.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

David G. Baker and Law Offices of David G. Baker on brief for
appellant.
    Robert J. Schneider, Jr., Trial Attorney, Executive Office
for U.S. Trustees, Department of Justice, Ramona D. Elliott, Deputy
Director/General Counsel, Executive Office for U.S. Trustees,

Department of Justice, P. Matthew Sutko, Associate General Counsel, Executive Office for U.S. Trustees, Department of Justice, Wendy L. Cox, Trial Attorney, Executive Office for U.S. Trustees, Department of Justice, William K. Harrington, United States Trustee for Region 1, Richard T. King, Assistant United States Trustee, Eric K. Bradford, Trial Attorney, Office of the United States Trustee, Department of Justice, and Lisa D. Tingue, Trial Attorney, Office of the United States Trustee, Department of Justice, on brief for appellee.

———————————

July 5, 2016

———————————

**KAYATTA**, <u>Circuit Judge</u>.  John E. Hoover, III, ("Hoover") appeals an order of the United States District Court for the District of Massachusetts affirming the United States Bankruptcy Court's conversion of Hoover's Chapter 11 bankruptcy case to a case under Chapter 7.  <u>Hoover</u> v. <u>Harrington</u>, No. 14-40126-TSH, 2015 WL 5074479 (D. Mass. Aug. 27, 2015).  For the reasons expressed below, we reject this appeal, which probably should not have been brought.[1]

## I. Background

As an individual and doing business as "Halloween Costume World," Hoover filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  The United States Trustee ("the Trustee") filed a motion pursuant to 11 U.S.C. § 1112(b) ("section 1112") to dismiss or convert the case to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

Hoover was the sole witness at the July 30, 2014, evidentiary hearing.  After direct and cross-examination about his business, his finances, and the prospects for rehabilitation and reorganization, the bankruptcy court granted the Trustee's motion, finding that cause existed to convert the case to Chapter 7 under

---

[1] Because there is a question of whether the Chapter 7 trustee still has approximately $200,000 on hand that he has not yet liquidated, with which Hoover claims he could resurrect his business, we decide this appeal on the merits rather than accept the Trustee's claim that this appeal should be dismissed as moot.

three separate provisions of section 1112(b)(4): "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under (b)(4)(A); "unauthorized use of cash collateral substantially harmful to 1 or more creditors" under (b)(4)(D); and "unexcused failure to satisfy timely any [pertinent] filing or reporting requirement" under (b)(4)(F). The district court affirmed, concluding that cause to convert existed under (b)(4)(A) and without discussing the alternative grounds for cause found by the bankruptcy court under (b)(4)(D) and (b)(4)(F). Hoover, 2015 WL 5074479, at 3 & n.2.

## II. Standard of Review

We review the bankruptcy court's legal conclusions de novo, its findings of fact for clear error, and its discretionary rulings for abuse of discretion. In re Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990). We may also affirm "on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below." Doe v. Anrig, 728 F.2d 30, 32 (1st Cir. 1984) (quoting Brown v. St. Louis Police Dep't, 691 F.2d 393, 396 (8th Cir. 1982)).

## III. Discussion

When an interested party files a motion to convert or dismiss a Chapter 11 case, the bankruptcy court inquires as follows: Does "cause" exist to convert or dismiss the case; and,

- 4 -

if so, is conversion or dismissal in the best interests of creditors and the estate?  See 11 U.S.C. § 1112(b)(1).[2]

Hoover argues that the bankruptcy court erred both in finding that "cause" to convert existed and in finding that conversion was in the best interests of the creditors.  We address each argument in turn.

## A.    Cause

As noted above, the bankruptcy court found at least three separate causes for conversion.  We begin and, because one cause is enough, see Anrig, 728 F.2d at 32, we end by explaining why the bankruptcy court did not err in finding cause under section 1112(b)(4)(A).

Cause exists under section 1112(b)(4)(A) if there has been a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

---

[2] 11 U.S.C. § 1112(b)(1), residing within Chapter 11 of the Bankruptcy Code, provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment . . . of a trustee or an examiner is in the best interests of creditors and the estate.

rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The bankruptcy court's finding of diminution in this case was simple and straightforward: Hoover conceded that he was selling inventory without replacing it, and his monthly operating reports ("MORs") showed insufficient profit to account for (or replace) the sold inventory. In short, the estate was diminishing. As for the likelihood of rehabilitation, the court again pointed to the MORs, showing insufficient cash flow to pay costs and debts. The court concluded: "This debtor barely makes it. That's what the numbers tell me and barely makes it only by not paying people . . . and that's no recipe for a reorganization."

Hoover's first response to the foregoing is procedural. He argues that he had no adequate notice that the trustee would rely on section 1112(b)(4)(A). His premise that he was entitled to reasonable notice is correct. In contested matters such as motions to dismiss or convert a case under section 1112(b), Federal Rule of Bankruptcy Procedure 9014 applies. See Fed. R. Bankr. P. 9014(a) ("[R]elief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."); see also id. 1017(f)(1) ("Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter, except under [certain provisions not relevant here]."). So the question is, did Hoover receive "reasonable notice and opportunity for [a] hearing"?

- 6 -

Clearly, he did.  The Trustee's motion expressly stated that the Trustee sought conversion based on a showing of cause under section 1112(b)(4)(A).  When it then became clear at the hearing begun on May 22, 2014, that the Trustee relied in great part on the MORs, the court continued the hearing to July 8, 2014, so as to allow Hoover and his counsel to present evidence and prepare to address the MORs, which were central to determining whether Hoover's estate was being diminished and whether there was a reasonable likelihood of rehabilitation.  Cf. In re Peña, No. 14-09799, 2016 WL 1043736, at *6 (Bankr. D.P.R. Mar. 15, 2016) (MORs demonstrated that a plan of reorganization was "simply not feasible for the [d]ebtors").  In so doing, the court explicitly stated that "we're talking about a likelihood-of-reorganization question and the Bank is pointing out that on the debtor's own cash, monthly operating reports it's losing money."  The court later granted Hoover's motion to continue the hearing until July 30, 2014.  The court also ordered the parties to file any MORs and legal memoranda relevant to the Trustee's motion, including materials relevant to Hoover's ability to propose a feasible Chapter 11 plan.  All of this was more than reasonable under the circumstances to inform Hoover that the likelihood of rehabilitation was at issue and to provide him with a meaningful opportunity to prepare and be heard on the issue.  See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (due process

- 7 -

requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Moving from the question of notice to the merits of the cause determination, Hoover baldly asserts that there was no evidence of diminution "other than possibly the fact that Hoover was continuing to conduct business." But as Hoover's own records unmistakably reveal, he was "conducting business" by selling inventory without replacing it with new inventory or retaining cash sufficient to offset the diminution.

Hoover next argues that his proposed plan of reorganization was not "patently unconfirmable," that the state tax authorities would "hopefully" write off much of his debt, and that it was "too early" to tell whether a zero dividend was "ineluctable." The issue before us, though, is whether the bankruptcy court abused its discretion in determining that there did not exist "a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

We see no such abuse. The Profit and Loss Statement revealed that in 2013, Hoover's business lost over $135,000, and the MORs showed that, since filing for bankruptcy, the business had generated only minimal profits despite selling off its

inventory and not paying anything to secured creditors.[3]  The court

described, in detail, its view of the evidence regarding whether

there was a reasonable likelihood of rehabilitation, noting a lack

of sufficient funds and income to pay monthly expenses under a

Chapter 11 plan.  The court, in its broad discretion, supportably

declined to credit Hoover's testimony that he had plans for

generating more income, finding those plans both speculative and

optimistic.[4]  See Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st

Cir. 1997) ("[p]articular deference" is due to bankruptcy court's

findings that depend on witness credibility); see also In Re Carp,

340 F.3d 15, 19 (1st Cir. 2003) (appellate courts "are not free

---

[3] Hoover claims that as a retail business, there is nothing "unreasonable" or "wrong about not replenishing inventory in the slowest season of the year[.]"  But selling off inventory while simultaneously not retaining the proceeds with which to buy new inventory and pay expenses is not a sign of an improving business.

[4] Hoover testified that he planned to start a flea market, but there was no written agreement for the market, there was little foundation for Hoover's claim that the market would result in "very significant weekly income," and there was no evidence to support the notion that the market would have the same or similar success as it had when it operated in a different location.  Hoover also claimed that his profits would increase because a competitor, Spirit Stores, had left town.  The only basis for this speculation was Hoover's internet search and the fact that the space was being rented by another business.  He could not confirm whether the competitor was moving to another space in the area and could not provide an accurate accounting of how much his business had dropped in the three years that Spirit competed with his business, only "guessing" that it took "fifty to a hundred thousand dollars of business away from [him]."  The court, in its discretion, declined to credit this speculative testimony.

to . . . make independent judgments about the credibility of witnesses").

Although the question of rehabilitation under section 1112(b)(4)(A) is not synonymous with reorganization (i.e., the debtor need not have a confirmed reorganization plan in place to avoid conversion), the debtor still must have "sufficient business prospects," In [re] Landmark Atl. Hess Farm, LLC, 448 B.R. 707, 714-15 (Bankr. D. Md. 2011), to "justify continuance of [a] reorganization effort," In re LG Motors, Inc., 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009) (quoting In re Rey, Nos. 04-B-35040, 04-B-22548, 06-B-4487, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006)). Upon review of the evidence and the bankruptcy court's detailed reasoning, we, like the district court, are "not left with a 'definite and firm conviction that a mistake has been committed.'" Hoover, 2015 WL 5074479 at *2 (quoting In re Watman, 301 F.3d 3, 8 (1st Cir. 2002)).

Given this conclusion, we have no need to consider Hoover's challenges to the other "causes" for conversion found by the bankruptcy court. As the Trustee points out, and Hoover does not contest, one cause is enough.

## B.  Best Interests of Creditors

Once the bankruptcy court determined that there was cause to convert the case, it had broad discretion to do so if it concluded that conversion was in the best interests of creditors

and the estate. 11 U.S.C. § 1112(b)(1). Given the court's findings on diminution and rehabilitation, its conclusion that conversion was in the interest of creditors and the estate was hardly surprising.

Hoover argues to us, nevertheless, that the creditors will mostly get nothing on liquidation after both the administrative fees and his Massachusetts tax obligation (in part) are paid. Therefore, he reasons, even a long shot at making a go of it under Chapter 11 is worth it for the creditors. Hoover, though, did not make this argument to the bankruptcy court; therefore, we can consider the argument waived. See In Re Net-Velázquez, 625 F.3d 34, 40 (1st Cir. 2010) ("[A]bsent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)). Even if not waived, this argument would fail. Confronted with two likely bleak alternative outcomes, the district court had ample discretion to conclude that a prompt conversion rather than further diminution was in the best interests of creditors, especially where no creditor opposed conversion as hostile to its interests.

We therefore find no error of law or abuse of discretion by the bankruptcy court in converting Hoover's Chapter 11 bankruptcy case to Chapter 7.

## IV.  Conclusion

The judgment of the district court, affirming the order of the bankruptcy court, is <u>affirmed</u>.[5]

---

[5]  We observe that Hoover's brief also criticizes the bankruptcy court's refusal to stay its order.  That criticism is rendered moot by our disposition of this appeal.